**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| TIMOTHY PLACE, NFP, | § | |
| d/b/a Park Place of Elmhurst | § | Case No. 20-21554 |
| | § | |
| | § | Hearing:   Dec. 22, 2020 |
| FEIN: 20-1835089, | § | 1:00 p.m. |
| | § | |
| Debtor | § | Hon. Jacqueline P. Cox |

**NOTICE OF MOTION AND MOTION TO RETAIN AND EMPLOY**
**GLOBIC ADVISORS, INC. AS NOTICING, SOLICITATION**
**AND CLAIMS AGENT PURSUANT TO 28 U.S.C. §156(c)**

PLEASE TAKE NOTICE that on Tuesday, December 22, 2020, at 1:00 p.m., I will appear before the Honorable Jacqueline P. Cox, or any judge sitting in that judge's place, and present the Motion To Retain And Employ Globic Advisors, Inc. As Noticing, Solicitation And Claims Agent Pursuant To 28 U.S.C. §156(c), a copy of which is attached. This motion will be presented and heard electronically using Zoom for Government. No personal appearance in court is necessary or permitted.

**To appear and be heard on the motion, you must do the following**: To appear by video, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828- 7666. Then enter the meeting ID and password.

**Meeting ID and password**.   The meeting ID for this hearing is 1612732896 and the password is 778135. The meeting ID and password can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

Dated: December 15, 2020                    **TIMOTHY PLACE, NFP, d/b/a PARK**
                                             **PLACE OF ELMHURST**


                                    By:   /s/ Bruce Dopke
                                          Proposed counsel for the Debtor

Bruce Dopke, Member (ARDC # 3127052)
Dopkelaw LLC
1535 W. Schaumburg Road, Suite 204
Schaumburg, IL   60194
Tel: 847-524-4811
bd@dopkelaw.com

## AFFIDAVIT OF SERVICE

The undersigned, Robert Stevens, President of Globic Advisors, Inc., having personal knowledge of the facts set forth herein and being competent to testify, hereby certify that I caused to be served a complete and accurate copy of the attached Notice of Motion and the document referred to therein to be made on the parties identified in **"Exhibit 1"** to this Affidavit of Service by overnight mail and by U.S. Mail, first class, postage paid, where the address was to a "Post Office Box," which notice was sent to the recipient on or before 5:00 p.m. prevailing Eastern Time on December 16, 2020.  This service is in addition to the electronic service made through the Court's ECF system and sent to those entities who have been registered as parties in interest to these cases.

I AFFIRM UNDER THE PENALTIES FOR PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

Dated: <u>December 15, 2020</u>

Robert Stevens
President, Globic Advisors, Inc.

State of New York        )
                         ) ss
County of Nassau         )

Before me a Notary Public in and for the County and State, personally appeared the above named Robert Stevens who acknowledged that he did sign the foregoing instrument and that the same is his free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal this 15th day of December 2020.

Notary Public

MARIA F MAWYIN MUNOZ
Notary Public, State of New York
No. 01MA6268499
Qualified in Queens County
Commission Expires Sep 10, 2024

**EXHIBIT 1**

| NAME 1 | ADDRESS 1 | ADDRESS 2 | CITY STATE ZIP |
|---|---|---|---|
| Bruce P. Weisenthal, Esq. | Schiff Harden | 233 S. Wacker Drive, Ste. 7100 | Chicago, IL  60606 |
| David H. DeCelles, Asst. | Asst. United States Attorney | 219 S. Dearborn St., 5th Floor | Chicago, IL  60604 |
| Department of the Treasury | Internal Revenue Service | PO Box 7346 | Philadelphia, PA  19101-7346 |
| Hon. John R. Lausch, Jr., | US Attorney Northern District Of IL | 219 Dearborn St., 5th Floor | Chicago, IL 60604 |
| Hon. Kwame Raoul, | Illinois Attorney General | 100 W. Randolph Street | Chicago, IL  60601 |
| IL Dept. Of Public Health | 122 S. Michigan Avenue | 7th and 20th Floors | Chicago, IL 60603 |
| Illinois Dept. Of Aging | Long Term Care Ombudsman Prog. | 160 North LaSalle St., Ste N-700 | Chicago, IL 60601-3117 |
| Illinois Dept. of Employment Sec. | Benefit Payment Control Division | PO Box 4385 | Chicago, IL  60680 |
| Illinois Dept. Of Financial and Professional Regulation | 100 West Randolph St., 9th Floor | | Chicago, IL 60601 |
| Illinois Dept. of Human Services | Grace B. Hou, Secretary | 401 South Clinton Street | Chicago, IL 60607 |
| Illinois Dept. Of Public Health | 69 W. Washington Street, 35th Floor | | Chicago, IL 60602 |
| Illinois Dept. of Revenue | Bankruptcy Unit, | PO Box 19035 | Chicago, IL  60680 |
| Illinois Dept. of Revenue | James R. Thompson Ctr. | Concourse Level, 100 West Randolph St. | Chicago, IL 60601-3274 |
| Illinois Finance Authority | Christopher B. Meister | 160 N. LaSalle St., Suite S-1000 | Chicago, IL 60601 |
| Illinois Student Assistance Comm'n | Bankruptcy Department | 1755 Lake Cook Road | Deerfield, IL 60015 |
| Medicaid & Medicare Services | 233 North Michigan Ave., Suite 600 | | Chicago, IL 60601 |
| Medicaid & Medicare Services | 7500 Security Blvd. | | Baltimore, MD 21244 |
| Mintz, Levin, Cohn, Ferris, et al. | Attn: Daniel S. Bleck, Esq | One Financial Center | Boston, MA 02111 |
| Office of The United States Trustee | Attn:  Adam Brief, Asst. US Trustee | 219 S. Dearborn St., Room 873 | Chicago, IL 60604 |
| UMB Bank, N.A. | Attn:  Virginia A. Housum, SVP | 120 South 6th Street, Ste. 1400 | Minneapolis, MN  55403 |
| United States Environmental Protection Agency | Richard L. Nagle, Bktcy. Contact | US EPA Region 5, Mail Code C-14J | Chicago, IL 60604 |
| US Dept. of Health & Human Servs | 200 Independence Ave. S.W. | | Washington, DC 20201 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| TIMOTHY PLACE, NFP, | § | Case No. 20-21554 |
| d/b/a Park Place of Elmhurst | § | |
| | § | |
| FEIN: 20-1835089, | § | |
| | § | |
| Debtors. | § | Hon. Jacqueline P. Cox (JPC) |

**MOTION TO RETAIN AND EMPLOY**
**GLOBIC ADVISORS, INC. AS NOTICING, SOLICITATION**
**AND CLAIMS AGENT PURSUANT TO 28 U.S.C. §156(c)**

Timothy Place, NFP d/b/a Park Place of Elmhurst (the "Park Place") and Christian

Healthcare Foundation, NFP (the "Foundation") (and Park Place and the Foundation will

sometimes be collectively referred to as the "Debtors"), debtors and debtors-in-possession in the

above-captioned chapter 11 cases (the "Cases"), present this motion (the "Motion") to retain and

employ Globic Advisors, Inc. ("Globic") as noticing, solicitation and claims agent pursuant to 28

U.S.C. §156(c).  In support of the Motion, the Debtors respectfully state as follows.

**Jurisdiction and Statutory Authority**

1.      Park Place owns and operates a continuing care retirement community ("CCRC")

located in Elmhurst, Illinois known as Park Place of Elmhurst (the "Campus"). The Campus is

improved with a building which includes (i) 181 independent living apartments, (ii) 46 assisted

living apartments, (iii) 20 memory care apartments, (iv) 37 nursing beds, and (v) related common

areas and parking. Approximately 300 senior citizens reside at the Campus.

2.      Park Place filed this Case on December 15, 2020 (the "Petition Date"). Park Place

is continuing in possession of the Campus and is operating and managing its business as a debtor-

-1-

in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in this Case, and no committees have been appointed or designated.

3.      Christian Healthcare Foundation, NFP (the "Foundation"), an affiliate of Park Place, filed a separate voluntary petition for relief in this judicial district and division on the Petition Date.  A motion for procedural consolidation and joint administration of the chapter 11 cases filed by Park Place and the Foundation (collectively, the "Debtors") is pending.

4.      The Foundation's only asset is a deposit account which contains approximately $16,500.00.  The Foundation currently does not conduct business.  The Foundation joined in these bankruptcy proceedings because it is a co-obligor under certain bond and loan transactions which may be restructured through a joint plan of reorganization (the "Plan") that Park Place has filed in these Cases.  The trustee who administers the bonds and the loan referred to above is the Foundation's only creditor.  The Foundation has filed a formal joinder in this Motion and consents to the relief sought in the Motion including the request that Globic should provide the noticing, solicitation and claims services which the Foundation may require as a debtor-in-possession and a co-proponent of the Plan.

5.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

6.  By this Motion, the Debtors respectfully request that the Court approve the retention of Globic as the Debtors' noticing, solicitation and claims agent pursuant to 28 U.S.C. §156(c). *The Debtors do not propose to retain Globic to create, run or manage the pleadings docket in these cases. The Debtors contemplate that the pleadings docket will continue to be managed by the Clerk of the United States Bankruptcy Court.*

### Basis For Relief Requested

7.  Park Place was initially capitalized with the proceeds of bonds authorized and issued by the Illinois Finance Authority (the "Authority") for the benefit of the Debtors. To provide the capital needed to build and later operate the Campus, the Authority issued its: (A) $109,115,000 Revenue Bonds, Series 2010A (Park Place of Elmhurst Project); (B) $7,875,000 Revenue Bonds, Series 2010B (Park Place of Elmhurst Project); (C) $5,000,000 Revenue Bonds, Series 2010C (Park Place of Elmhurst Project) (Accelerated Redemption Reset Option Securities (ARROS); (D) $10,275,000 Revenue Bonds, Series 2010D-1 (Park Place of Elmhurst Project) (Tax-Exempt Mandatory Paydown Securities (TEMPS-75); and (E) $15,350,000 Revenue Bonds, Series 2010D-2 (Park Place of Elmhurst Project) (Tax-Exempt Mandatory Paydown Securities (TEMPS-65) (all such bonds issued in 2010, the "Original Bonds").

8.  The Original Bonds were issued primarily to (i) pay or reimburse Park Place for the payment of all or a portion of the costs of acquiring, constructing, renovating, remodeling and equipping certain heath facilities owned by Park Place, and all necessary and attendant facilities, equipment, site work, zoning, entitlements and utilities related thereto, including, but not limited to, the acquisition, construction and equipping of the Campus; (ii) provide working capital; (iii)

fund debt service reserve funds; (iv) pay a portion of the interest on the Original Bonds; and (v) pay certain expenses incurred in connection with the issuance of the Original Bonds.

9.      On January 17, 2016, the Debtors filed voluntary bankruptcy petitions under Chapter 11 of Title 11 of the United States Code.  Such filings commenced a bankruptcy case in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, styled "In re TIMOTHY PLACE, NFP, *et als.*, Case No. 16-01336 (JPC)."  Pursuant to such petitions and the plan of reorganization confirmed by the bankruptcy court in the bankruptcy proceeding (the "2016 Plan"), the 2016 Exchange (defined below) was approved and effectuated.

10.     As contemplated under the 2016 Plan, in exchange (the "2016 Exchange") for the Original Bonds, the Authority issued its (i) $103,691,500 Revenue Bonds (Park Place of Elmhurst Project) Series 2016A (the "Series A Bonds"), (ii) $15,496,392 Revenue Bonds (Park Place of Elmhurst Project) Series 2016B (the "Series B Bonds"), and (iii) $21,918,750 Revenue Bonds (Park Place of Elmhurst Project) Series 2016C (the "Series C Bonds" and together with the Series A Bonds and Series B Bonds, the "2016 Bonds"). The indebtedness associated with the Bonds will sometimes be referred to herein as the "Bond Claim."

11.     The Authority issued the 2016 Bonds under that certain Bond Trust Indenture, dated as of May 1, 2016, by and between the UMB Bank, N.A., as bond trustee thereunder (the "Bond Trustee") and the Authority (the "Bond Indenture").  Pursuant to a Loan Agreement dated as of May 1, 2016 between Authority and the Debtors (the "Loan Agreement" and together with the Bond Indenture and any other document or agreement delivered as security for, or in respect to, the 2016 Bonds or the Debtors' obligations under any of such documents are collectively referred to as the "Bond Documents"), the Authority loaned the proceeds of the 2016 Bonds to the Debtors.

-4-

The rights of the Authority under the Loan Agreement were assigned to the Bond Trustee under the terms of the Bond Indenture.

12.     As security for the obligations owing on the 2016 Bonds, Park Place granted the Bond Trustee, inter alia: (i) a first mortgage lien on the real property on which the Campus was constructed, and (ii) a first priority security interest in the personal property and fixtures located at the Campus (collectively, the "Mortgaged Property"), pursuant to a Mortgage and Security Agreement, dated as of May 1, 2016, between the Debtors and the Bond Trustee.  Pursuant to a Master Trustee Indenture, dated as of May 1, 2016, among the Debtors and the Bond Trustee, as Master Trustee thereunder (the "Master Trust Indenture"), the Debtors granted a security interest in their Gross Revenues (as defined in the Master Trust Indenture) to the Bond Trustee as security for the payment of the 2016 Bonds.  In addition, repayment of the 2016 Bonds is secured by moneys deposited to the credit of the accounts in the related respective Debt Service Reserve Funds, established under the Bond Documents.

13.     The financing structure reflected in the Bond Documents vested legal title to the Bond Claim in the Trustee.  However, the real economic interest in the Bond Claim has always resided with the holders and owners of the 2016 Bonds (the "Bondholders"), who have the ability under the Bond Indenture to direct the Bond Trustee in, *inter alia*, the administration of the Loan Agreement, as set forth more fully in the Bond Documents. Accordingly, it is appropriate for the Bondholders to be given notice of certain proceedings in this Case. Moreover, as the Debtors have proposed and seeks to confirm a plan of reorganization in this Case, the Bondholders can and should be afforded an opportunity to cast votes for or against such plan.

14.     Identifying the Bondholders is a specialized task. After the 2016 Bonds were initially sold, they were publicly traded.  On information and belief, as much as twenty five percent (25%) of the 2016 Bonds were sold to non-institutional customers of the investment houses which made markets for the Bonds.  Although it is not possible for the Debtors to know who the current holders of the 2016 Bonds are, it is likely that a significant percentage of those bonds are held by non-institutional holders.  However, the Debtors do not know, and have no means to ascertain how many individuals hold the 2016 Bonds, or their names and addresses. Moreover, the Bondholders are a continually evolving group (as the Bonds continue to publicly trade). For these reasons, the Debtors have determined that they need to retain the services of a professional noticing, solicitation and claims agent with experience in publicly traded bond issues to identify the Bondholders. The Debtors have selected Globic to perform these services.

15.     As set forth in the affidavit of Robert A. Stevens (the "Stevens Affidavit"), President of Globic, attached hereto as **Exhibit A**, Globic is a New York based firm specializing in investor communications for publicly traded companies, whose services include assistance with tender offers, exchange offers and other consent based solicitations. Globic routinely serves as tabulation agent with respect to insolvency and non-insolvency solicitations.  Globic has developed efficient and cost-effective methods to properly handle the voluminous mailings associated with the noticing and solicitation portions of chapter 11 cases.  Based on this experience, the Debtors believe that Globic possesses the skills and experience needed to assist the Debtors with providing notice to the Bondholders and other parties in interest to these cases, including the solicitation and tabulation of all such claims and voting done in connection with any plan confirmation process conducted in this Case.

-6-

16.     Globic intends to contact the Bondholders through postings with the Depository Trust Company and contacts with DTC Participant Banks (who hold 2016 Bonds for their customers).  Globic will contact creditors who are not bondholders as well as other parties in interest by mail or express messenger (as appropriate).  In view of the number of anticipated Bondholder claimants and the complexity of Park Place's business, the Debtors submit that the appointment of Globic as a noticing, solicitation and claims agent is necessary and in the best interests of both the Debtors' estates and creditors.

### Requested Relief

17.     The Debtors seek to retain and employ Globic as noticing, solicitation and claims agent pursuant to 28 U.S.C. §156(c) and upon the terms set forth below and in Globic's proposal to the Debtors dated July 7, 2020 (the "Proposal") a copy of which is attached to this Motion as **Exhibit B**.   Globic will ***not*** be assuming any responsibility for the maintenance of the pleadings docket in these cases, and it is contemplated by the Debtors and Globic that all pleadings, orders, notices and other matters (other than claims) which are filed of record in these cases will be reflected in the case docket which will continue to be managed by the Clerk of the United States Bankruptcy Court.

18.      For its services as noticing, solicitation and claims agent, Globic proposes to be compensated on the following terms:

a.   Bondholder Solicitation and Tabulation Agent Services:  $ 10,000.00

b.   Bondholder Noticing Agent:

- Transmit the solicitation to the Depository Trust Company, as the registered holder of the Bonds (along with any other certificated holders). $ 100.00

-7-

- Deliver the notice to the underlying DTC Participant Banks, who hold the bonds as custodian for their clients, the bondholders. These banks will notify their clients and their financial advisors/brokers electronically as to the notice. $ 5.00 per DTC Participant

- Coordinate with the DTC Participant Banks in order to mail physical copies of the notice to their clients, the bondholders. $ 0.50 per Bondholder

c.  Creditor/Interested Parties Noticing Agent:

- $ 300.00 Per Noticing Event
- $ 0.50 per Mailing Contact

d.  Claims Agent:

- $ 500.00 Set-Up
- $ 10.00 per Response

e.  Website:

- $ 2,000.00 Set-Up
- $ 10.00 per document
- $ 200.00 per month

Additional detail concerning the tasks to be performed in connection with the above described services and charges is found in Globic's Proposal, including a fee schedule for any out-of-pocket costs and expenses which may be charged to the Debtors pursuant to the Proposal.

19.     Globic has acted as the noticing, solicitation and claims agent in numerous cases and is well experienced to perform the services contemplated in the Engagement Letter. *See, e.g., In re Rock Glen Healthcare, Inc.*, Case No. 12-10320 (Bankr. M.D. La.); *In re The Groves in Lincoln, Inc., et al.*, Case No. 13-06976 (Bankr. D. Mass.); *In re The Estelle Peabody Memorial Home*, Case No. 13-06976 (Bankr. S.D. Ind.).

20.      By appointing Globic as the noticing, solicitation and claims agent in these chapter 11 cases, the distribution of notices to all parties in interest (including Bondholders) will be expedited, and the clerk's office will be relieved of the administrative burden of processing what may be an overwhelming number of notices to entities for whom mailing addresses might not otherwise be known or knowable.

21.      Globic shall not employ any past or present employee of the Debtors for work that involves the Debtors' Cases.

22.      The Debtors respectfully request that the undisputed post-petition fees and expenses incurred by Globic in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A) and be paid in the ordinary course of business without further application to or order of the Court. Globic agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for UMB Bank, N.A., as successor master trustee and successor indenture trustee, counsel for any official committee, if any, and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Letter or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

23.      Globic does not hold a retainer from the Debtors.

24.      In connection with its retention as noticing, solicitation and claims agent:

-9-

Case 20-21554   Doc 7   Filed 12/15/20   Entered 12/15/20 21:41:07   Desc Main
Document     Page 14 of 26

    (a)    Globic will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the noticing, solicitation and claims agent in the chapter 11 case;

    (b)    By accepting employment in the chapter 11 case, Globic waives any rights to receive compensation from the United States government in connection with the Debtors' chapter 11 cases;

    (c)    In its capacity as the noticing, solicitation and claims agent in the chapter 11 case, Globic will not be an agent of the United States and will not act on behalf of the United States; and

    (d)    Globic is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

25.    To the extent that there is any inconsistency between this Application, the Retention Order and the Proposal, the Retention Order shall govern.

**Notice**

26.    Notice of this Motion has been served on the following parties or, in lieu thereof, to their counsel, if known: (i) the United States Trustee for the Northern District of Illinois; (ii) the United States Attorney for the Northern District of Illinois; (iii) counsel for the Bond Trustee; (iv) the Illinois Finance Authority; (v) the holders of the twenty largest unsecured claims against the Debtors; and (vi) those who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice need be given.

**No Prior Request**

27.    No prior request for the relief sought in the Motion has been made to this or any other Court.

28.     The Debtor requests that the Court, as permitted by Rule 9006(b)(1), should determine that the notice of the hearing on the Motion given to parties in interest was reasonable and sufficient under the circumstances.

WHEREFORE, Timothy Place, NFP d/b/a Park Place of Elmhurst respectfully requests that this Court enter an Order pursuant to 11 U.S.C. §327 authorizing it to employ Globic Advisors, Inc. *nunc pro tunc* to the Petition Date under the terms and conditions set forth herein and in the Engagement Letter, and for such other and further relief as the Court deems necessary and just.

Dated: December 15, 2020                          TIMOTHY PLACE, NFP, d/b/a PARK
                                                  PLACE OF ELMHURST, Debtor and
                                                  Debtor In Possession


                                             By: /s/ Bruce Dopke
                                                 Proposed counsel for the Debtor

Bruce Dopke, Member (ARDC # 3127052)
Dopkelaw LLC
1535 W. Schaumburg Road, Suite 204
Schaumburg, IL  60194
Tel: 847-524-4811
bd@dopkelaw.com

-11-

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| TIMOTHY PLACE, NFP, | § | Case No. 20- 21554 |
| d/b/a Park Place of Elmhurst | § | |
| | § | |
| FEIN: 20-1835089, | § | |
| | § | |
| Debtor. | § | Hon. Jacqueline P. Cox |

**AFFIDAVIT OF ROBERT STEVENS IN SUPPORT OF MOTION TO RETAIN
AND EMPLOY GLOBIC ADVISORS, INC. AS NOTICING, SOLICITATION
AND CLAIMS AGENT PURSUANT TO 28 U.S.C. §156(c)**

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | ) ss: |
| COUNTY OF NASSAU | ) |

Robert Stevens being duly sworn, deposes and says as follows:

1.      I am the President of Globic Advisors, Inc. ("Globic"), a Chapter 11 administrative

services firm, whose offices are located at 485 Madison Avenue, 7th Floor, New York, NY 10022.

2.      I submit this Affidavit in support of the Motion (the "Motion")[1] to retain and

employ Globic Advisors, Inc. as noticing, solicitation and claims agent pursuant to 28 U.S.C. §

156(c) and 11 U.S.C. § 105(a).  Except as otherwise noted, I have personal knowledge of the facts

contained in this Affidavit.

3.      I understand that Timothy Place, NFP d/b/a Park Place of Elmhurst and its affiliate,

Christian Healthcare Foundation NFP (collectively, the "**Debtors**") seek to retain and employ

Globic as noticing, solicitation and claims agent pursuant to 28 U.S.C. §156(c) and upon the terms

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
Motion.

set forth in Globic's proposal to the Debtors dated July 7, 2020 (the "Proposal") a copy of which is attached to the Motion as **Exhibit B**.   Globic will ***not*** be assuming any responsibility for the maintenance of the pleadings docket in these cases, and it is contemplated by the Debtors and Globic that all pleadings, orders, notices and other matters (other than claims) which are filed of record in these cases will be reflected in the case docket which will continue to be managed by the Clerk of the Bankruptcy Court.

4.     As custodian of court records pursuant to 28 U.S.C. § 156(c), Globic will perform, at the request of the Office of the Clerk of the Court (the "Clerk"), the noticing, solicitation, claims recording and docketing and related services specified in the Motion and the Proposal.

5.     Globic is one of the country's leading Chapter 11 administrators, with experience in noticing, claims administration, solicitation and balloting and facilitating other administrative aspects of chapter 11 cases.  Globic has provided identical or substantially similar services in other chapter 11 cases.

6.     Globic represents, among other things, that:

(a)     it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the noticing, solicitation and claims agent in these chapter 11 cases;

(b)     by accepting employment in these chapter 11 cases, Globic waives any right to receive compensation from the United States government in its capacity as the noticing, solicitation and claims agent in these chapter 11 cases; and

(c)     in its capacity as the noticing, solicitation and claims agent in these chapter 11 cases, it is not an agent of the United States and is not acting on behalf of the United States;

(d)     it will not employ any past or present employees of the Debtors in connection with its work as the noticing, solicitation and claims agent in these chapter 11 cases.

7.       To the best of my knowledge and belief, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Globic, nor any employee of Globic, holds or represents any interest materially adverse to the Debtors, their estates or their creditors with respect to matters upon which Globic is to be engaged.

8.       To the best of my knowledge and belief, and based solely upon information provided to me by the Debtors and except as provided herein, neither Globic, nor any employee of Globic, has any materially adverse connections to the Debtors, their creditors or equity interest holders, or other relevant parties, their respective attorneys and accountants, any United States Bankruptcy Judge for the Northern District of Illinois, the United States Trustee for Region 11, or any person employed by the office of the United States Trustee, that would conflict with the scope of Globic's retention or would create any interest adverse to the Debtors' estates or any other party-in-interest.

9.       The Debtors have hundreds of creditors and, from time to time, Globic may have represented certain of those creditors in completely unrelated matters.   Proposed bankruptcy counsel for the Debtors has provided me with a list of the Debtors' creditors and other parties-in-interest (the "Conflicts List"), a copy of which is attached hereto as Exhibit 1, that it received from the Debtors.  I have caused an examination of these records to be made to determine which, if any, of the parties on the Conflicts List, Globic may have represented in the past or may be representing at the present time in totally unrelated matters.  [This search has disclosed that, to the best of my present knowledge, Globic has not in the past and is not currently representing any of the parties on the Conflicts List.]

10.     In addition, Globic has identified vendors appearing on the Conflicts List that may
have been vendors of Globic, but Globic has not in the past, and is not currently, representing any
of those vendors.

11.     Certain of Globic's professionals may have been formerly employed by firms that
may be creditors or may provide professional services to parties in interest in these Cases.  Except
as disclosed herein, these professionals did not work on any matters involving the Debtors while
employed by their previous firms.  Moreover, these professionals were not employed by their
previous firms when this chapter 11 case was filed.

12.     There may be other creditors of the Debtors, that Globic may have or may be
presently representing, but in no event is Globic representing any other creditor with respect to the
Debtors' bankruptcy proceedings.  To the extent I become aware of Globic having represented any
other creditors of the Debtors, I will file a supplemental affidavit advising the Court of the same.
To the extent that Globic discovers any facts bearing on matters described herein, Globic will
supplement the information contained herein.

13.     Notwithstanding anything contained herein, as part of its diverse business, Globic
is the noticing, claims and balloting agent for debtors in numerous cases involving many different
creditors (including taxing authorities), professionals (including attorneys, accountants,
investment bankers and financial consultants), some of which may be creditors or represent
creditors and parties-in-interest in this chapter 11 case.  In addition, Globic has in the past and will
likely in the future continue working with or against other professionals involved in this chapter
11 case in matters unrelated to this chapter 11 case.  Based upon my current knowledge of the
parties involved, and to the best of my knowledge, none of these business relations constitute
interests adverse to that of the creditors, or the Debtors' estates, with respect to the matters upon

which Globic is to be engaged. Additionally, Globic employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors. However, to the best of my knowledge, such relationships, to the extent they exist, are of a personal nature and completely unrelated to this chapter 11 case.

14.    Based upon the information available to me, I believe that Globic is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, in that Globic and its personnel: (a) are not creditors, equity security holders or insiders of the Debtors; (b) are not and were not, within two years before the date of the filing of these Cases, a director, officer or employee of the Debtors; and (c) do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

15.    In performing the services identified above, Globic will charge the rates set forth in the Proposal. The rates set forth therein are as favorable and reasonable as the prices Globic charges in cases in which it has been retained to perform similar bankruptcy related services.

16.    Globic will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

Robert Stevens, President
Globic Advisors, Inc.

Sworn to before me this
14th day of December 2020

Notary Public

MARIA F MAWYIN MUNOZ
Notary Public, State of New York
No. 01MA6268499
Qualified in Queens County
Commission Expires Sep 10, 2024

## Exhibit 1

**Potential Parties in Interest**

**globic**
ADVISORS

485 MADISON AVENUE   7TH FLOOR   NEW YORK, NY   10022   T| 212 227 9699   F| 212 271 3252

July 7, 2020

Mr. Bruce Dopke
Stahl Cowen Crowley Addis LLC
55 West Monroe Street, Suite 1200
Chicago, Illinois 60603

Via E-Mail: bdopke@stahlcowen.com

**Re:      Solicitation and Tabulation Agent of Bondholder Votes,**
**Noticing Agent and Claims Agent**

**Debtor(s):      Timothy Place, NFP d/b/a Park Place of Elmhurst and**
**Christian Healthcare Foundation, NFP**

**Bonds:       Illinois Finance Authority Revenue Bonds**
**(Park Place at Elmhurst Proj.) Series 2016A, 2016B, 2017C**
**CUSIPs:  45203H7D8, 45203H7E6, 45203H7F3, 45203H7G1,**
**45203H7H9, and 45203H7J5**

Dear Mr. Dopke:

It would be our pleasure to assist as the Solicitation Agent for Bondholder Votes, Noticing Agent, and Claims Agent with respect to the bankruptcy associated with the Debtors and the bonds listed above.

**Service Schedule**

**I:      Bondholder Solicitation and Tabulation Agent Services      $ 10,000.00**

Upon launch of the solicitation, Globic will be responsible for the following:

- Research the above listed bonds in an to attempt to identify bondholders, who make their identities known to the obligor/trustee upon request;

- Provide assistance in developing the mechanical aspects of the solicitation strategy;

- Provide assistance in the crafting of language to be used in communicating the solicitation to bondholders, working closely with you and the working group and focusing on the mechanical aspects of the documents, which will include the drafting of ancillary documents including a cover letter specific to a retail population and ballots (master and beneficial holder);

- Transmit the solicitation to the Depository Trust Company, its Participant Banks, and bondholders;

Exhibit B

- Provide a help-line to handle questions from holders, Custodians, Clearing Systems, Brokers, and any other Intermediaries;

- Monitor the responses of each broker and bank holding securities on behalf of their customers;

- Tabulate the ballots and present a final tabulation certificate (with all supporting data).

**II:**    **Bondholder Noticing Agent**

Upon launch of any noticing event, Globic will be responsible for the following:

- Transmit the solicitation to the Depository Trust Company, as the registered holder of the Bonds (along with any other certificated holders).    **$    100.00**

- Deliver the notice to the underlying DTC Participant Banks, who hold the bonds as custodian for their clients, the bondholders.  These banks will notify their clients and their financial advisors/brokers electronically as to the notice.

    **$    5.00 per DTC Participant**

- Coordinate with the DTC Participant Banks in order to mail physical copies of the notice to their clients, the bondholders.    **$    0.50 per Bondholder**

**III:**    **Creditor/Interested Parties Noticing Agent**    **$  300.00 Per Noticing Event**
    **$    0.50 per Mailing Contact**

- Utilizing a creditor list/matrix supplied by the client, deliver notification to all creditors or interested parties upon request.

**IV:**    **Claims Agent**    **$  500.00 Set-Up**
    **$    10.00 per Response**

- Tabulate claims submitted by creditors and deliver daily tabulation updates, including final tabulation certificate (with all supporting data) at the deadline; and

- Maintain claims register.

**V:**    **Website**    **$ 2,000.00 Set-Up**
    **$    10.00 per document**
    **$    200.00 per month**

- Dedicate an associate address of the www.globic.com website for the posting of bankruptcy related documents;

- Post documents in PDF format on the webpage (*the client will be responsible for delivering documents to Globic for posting to the site*); and

- Maintain the webpage for the duration of the event.

**Professional Fees and Out-of-Pocket Expenses**

Our fees will be charged as listed above.

All out-of-pocket expenses are separately billed and are payable by you.  Printing and mailing estimates are not included in our quote for service fees and may be payable directly by the issuer.

**Confidentiality**

We understand the confidential nature of this project. Accordingly, we will keep our work strictly confidential. All data gathered will be made available to the issuer, and its advisors and to persons identified by you, as specifically directed in writing.  Globic agrees to preserve the confidentiality of all non-public information provided by the client or its agents for Globic's use in fulfilling its obligations.

If you have any questions, please feel free to contact us at 212-227-9622.

Sincerely,

Robert Stevens
President

485 MADISON AVENUE    7TH FLOOR    NEW YORK, NY    10022    T| 212 227 9699    F| 212 271 3252

## *<u>Fee Schedule related to Out-Of-Pocket Expenses</u>*

The service fees of Globic Advisors do not include any out-of-pocket expenses.

✦ Out-of-pocket expenses, which include any third-party fees incurred by Globic at the request of the client or in the furtherance of the proposed transaction, (e.g., DTC, Euroclear and Clearstream, nominee/participant charges, telephone number research firm, or newspaper publication) are billed at cost.

✦ In projects involving mailings to more than 200 investors that require numerous enclosures or greater than 20 pages per package, Globic will utilize a local financial printer, and if requested, will provide quotes from multiple suppliers.

✦ Internal printing (including scanning) will be charged at a rate of $0.15 per page in black and white ink and $0.25 per page in color ink; $0.25 for envelope and label. Postage will be billed at cost.

✦ Domestic express shipping is billed at the following levels: envelopes- $35, packs- $45, medium boxes- $75 and large boxes- $95.  Costs that exceed these base levels or any international shipping will be billed at cost.  Local messenger items are billed at $200 irrespective of the weight.

✦ Domestic long-distance telephone is billed at $1 per minute. International long-distance telephone is billed at $2 per minute. Outbound faxes are billed at $2 per page, inbound faxes at $1 per page.

✦ Broker and bank pass-along fees are billed at an average of $3.25 per investor. This reflects the combined cost of investor identification pass-along fees, the service fees for mailing one outbound piece to each holder and the processing of one reply by each such holder.

✦ Out-of-pocket expenses are generally a function of the number of investors on a given project. To the extent possible, Globic strives to minimize these costs for its clients.  In addition, Globic will request written authorization from our client before incurring any significant out-of-pocket expense. Globic reserves the right to request deposits towards, or prepayment of these expenses as needed.

January 2020



485 MADISON AVENUE    7TH FLOOR    NEW YORK, NY    10022    T| 212 227 9699    F| 212 271 3252

## *<u>Fee Schedule related to Out-Of-Pocket Expenses</u>*

The service fees of Globic Advisors do not include any out-of-pocket expenses.

✦ Out-of-pocket expenses, which include any third-party fees incurred by Globic at the request of the client or in the furtherance of the proposed transaction, (e.g., DTC, Euroclear and Clearstream, nominee/participant charges, telephone number research firm, or newspaper publication) are billed at cost.

✦ In projects involving mailings to more than 200 investors that require numerous enclosures or greater than 20 pages per package, Globic will utilize a local financial printer, and if requested, will provide quotes from multiple suppliers.

✦ Internal printing (including scanning) will be charged at a rate of $0.15 per page in black and white ink and $0.25 per page in color ink; $0.25 for envelope and label. Postage will be billed at cost.

✦ Domestic express shipping is billed at the following levels: envelopes- $35, packs- $45, medium boxes- $75 and large boxes- $95.  Costs that exceed these base levels or any international shipping will be billed at cost.  Local messenger items are billed at $200 irrespective of the weight.

✦ Domestic long-distance telephone is billed at $1 per minute. International long-distance telephone is billed at $2 per minute. Outbound faxes are billed at $2 per page, inbound faxes at $1 per page.

✦ Broker and bank pass-along fees are billed at an average of $3.25 per investor. This reflects the combined cost of investor identification pass-along fees, the service fees for mailing one outbound piece to each holder and the processing of one reply by each such holder.

✦ Out-of-pocket expenses are generally a function of the number of investors on a given project. To the extent possible, Globic strives to minimize these costs for its clients.  In addition, Globic will request written authorization from our client before incurring any significant out-of-pocket expense. Globic reserves the right to request deposits towards, or prepayment of these expenses as needed.

January 2020